Plaintiff appealed from judgment that sustained exceptions of no cause and no right of action leveled against the efficacy of her petition, and dismissed her suit. She sued to recover damages allegedly due her on account of the accidental death of her son, Carter Bell, while a guest of the Hotel Bentley in the City of Alexandria, Louisiana, owned and operated by the defendant, which occurred, as by her alleged, because of its negligence. Article Five of plaintiff's petition contains the facts upon which her suit is predicated, and perforce reflects her best effort to state a cause of action. With immaterial deletions, we quote it, to wit: "That petitioner's son, the deceased Carter Bell, in addition to being a guest of the defendant hotel, was a guest and invitee of the Mirror Room and Mirror Room Bar; that shortly after midnight of August 16, 1946, said Carter Bell left the Mirror Room Bar, and began to ascend a marble stairway leading thencefrom, upward to the main lobby of the Defendant hotel. Further, patrons of the Coffee Shop, leaving therefrom, have access to the identical stairway. These approaches, from the Mirror Room and Mirror Room Bar, and the Coffee Shop, meet and have a common stairway approach. For the first four steps of this marble and marble derivative stairway, there are no handrails. The fifth step, in the upward ascent is a landing or platform. Thence for the balance of the stairway, there are two handrails, with this exception, that for the final or top step, which coincides with the landing or main lobby floor, and for a space of twelve and one-half inches (12 1/2"), there are no handrails. The lack of a continuing handrail constitutes a trap. The deceased Carter Bell, in his ascent of these disconnected components of a stairway, had a right to rely upon a continuing handrail. The structural defect, of the relied-upon handrail stopping short of the safety zone constituted a hazard and a menace, of which the Defendant hotel was presumed to have intimate and supervisory knowledge. The deceased Carter Bell was witnessed in ascending the stairways. Toward the final step, he stumbled, and not having a handrail to rely *Page 857 
upon, his body was precipitated backward. In his fall he landed head down, face and feet upward.* * *"
Plaintiff further alleged that the fall of her son and his consequent death were the "result of a structural defect which knowledge is imputed to the defendant."
Plaintiff additionally alleged that without notifying the police or members of the family of the deceased, the defendant called a commercial ambulance and instructed the driver thereof to carry the injured man to a hospital some eight miles distant, whereas common prudence dictated that he should have been carried to the nearest hospital and not to one so far away, to reach which the ambulance had to traverse "bumpy and winding roads"; that when the ambulance arrived at the hospital it was found that the injured man was dead. She then draws the conclusion and alleges that it was negligence on defendant's part to have so dealt with a guest, after he was so seriously injured and rendered unconscious; that it also failed in its duty in not providing him with prompt medical attention "which could have prolonged his life."
The quoted portion of plaintiff's petition makes it clear that the deceased stumbled as he was in the act of stepping from the tread of the last step of the stairway onto that part of the lobby floor which plaintiff refers to as the "final or top step". It is also equally clear therefrom that the handrails did extend to a point immediately above the edge of that part of the lobby floor referred to as the last tread of the stairway. The width of this tread is alleged to be 12 1/2 inches. In other words, the rails in reality are equal in length to the walls of the stairway. For them to have gone farther they would, in reality, have had to extend above the lobby floor.
If we understand correctly the allegations, it is further alleged that the failure to extend the rail over said 12 1/2 inches constituted a trap, a hazard and a menace; and that the deceased, in his ascent of the stairway, "Had a right to rely upon a continuing handrail" and "not having a handrail to rely upon, his body was precipitated backward".
It is not alleged that the deceased was using either handrail to assist him in ascending the stairway, nor that his loss of balance was caused or contributed to by effort on his part to right himself, after stumbling, by grabbing at either rail. His position was such that had he done this, although not extended over the lobby floor to any extent, his hand would have surely contacted a rail at some point. It must be remembered that the deceased, according to the petition, was in the act of stepping upon the lobby floor when he stumbled and at this time, as we have heretofore pointed out, the upper part of the two lines of rail were respectively to his right and left.
[1] So far as our research has extended, we have found no law, statutory or otherwise, that requires the installation of handrails on each or either side of an enclosed stairway, such as we are now discussing. We have been cited to no such law. We know from observation that this is not invariably done. It is a matter that addresses itself to the individual owner, and when such rails are installed, their design, length, and location are matters of individual choice.
[2] Plaintiff finds no fault with the construction of the rails in the present case save that they are not long enough; that is, they did not really extend beyond the upper end of the stairway and over about one foot of the lobby floor. Surely this is not a structural defect nor a trap or hazard, even though it be conceded that defendant was under obligation to have placed rails along the sides of the stairway.
It is not alleged nor contended that the deceased stumbled and fell because of the insufficiency in length of the rails, or from any other alleged defects in the stairway. Obviously, he stumbled and lost balance because of his own clumsiness or carelessness and it would be a far fetched assumption to say that had the rails extended as far as plaintiff alleges they should have extended, the deceased would have, by grabbing same, regained his equilibrium and escaped falling. We would have to assume this in order to efface, as a controlling *Page 858 
factor in the case, the admitted fact that deceased stumbled and fell solely from his own fault.
We agree with argument of defendant's counsel that it is somewhat difficult to understand how the deceased could have fallen backward after stumbling in the manner alleged, after attempting to grab the rail, if he did so, which is not certain from the pleadings. It seems to us, in such circumstances, his body would have fallen forward. However, a definite holding on this collateral question is not necessary to a correct decision of the primary issue tendered by the appeal.
[3] There is no basis for damages in the contention that defendant failed in its duty to plaintiff's son after he was fatally injured. Even though it be granted that defendant did not act as prudently as others might have acted in like circumstances, it does not follow that had a different course been pursued, the injured man's condition would have been ameliorated or his life prolonged. His injuries were fatal. He was rendered unconscious and having died before reaching the hospital argues convincingly that his condition was beyond human hands to relieve.
Both sides have cited and quoted from several decisions, mostly from other states, to support their respective positions. None of the cases is in point, and we shall not encumber this opinion by further reference to them. It appears to us obvious that even though plaintiff should have the opportunity to prove all of her allegations, and she did so, recovery would still be denied her.
For the reasons herein given, the judgment appealed from is affirmed with costs.
KENNON, J., absent.
 *Page 27